STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7534
FAX: (415) 436-7234
Leif.Dautch@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CYRIL HANNA,<br><br>Defendant. | **CASE NO. 22-CR-048 CRB**<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: October 26, 2022<br>Time: 10:30 a.m.<br>Judge: Hon. Charles R. Breyer |

## I. INTRODUCTION

Defendant Cyril Hanna appears before this Court for sentencing having pleaded guilty to Count One of the Information charging him with unlawful possession of a firearm and ammunition. PSR ¶¶ 1-2; Dkt. No. 38 (Application to Enter Guilty Plea). In the charged incident, Hanna was found with a loaded gun after fleeing from police and crashing his truck into parked cars and the front gate of a home. This was Hanna's second gun-related arrest since his March 2021 release from state prison, where he had served nine years for armed robbery. In addition to that prior conviction for robbery with a firearm, Hanna has a disturbingly violent criminal history, including a juvenile adjudication for voluntary manslaughter, two separate arrests for murder, two other arrests for attempted murder, and still further arrests for assault with a firearm, robbery, and burglary. In fact, Hanna has been arrested for a violent

offense every year that he has been out of custody since 2002. Given Hanna's dangerous conduct in the charged offense, his criminal history, and his unwillingness and/or inability to comply with the law while on state supervision or federal pretrial supervision, the government respectfully recommends that the court impose a sentence of 21 months of imprisonment, to be followed by three years of supervised release, as well as a $100 special assessment and forfeiture.

## II. BACKGROUND

### A. Hanna Runs Red Light, Flees from Police, and Crashes Truck with Loaded Gun in It

Around 4:45 p.m. on August 28, 2021, San Francisco Police Officers were driving in a marked police car southbound on 3rd Street in the Bayview neighborhood of San Francisco. PSR ¶ 8. The officers observed a truck stopped at a red light at the intersection of 3rd Street and Kirkwood. Suddenly, the truck accelerated at a high speed and ran the red light. Officers followed the truck and attempted to initiate a traffic stop. The truck responded by increasing its speed to 45-50 miles per hour in a 25 MPH zone, and running through a stop sign. The officers activated their siren and overhead lights, but the driver of the truck still failed to yield. *Id.* The truck continued into the next intersection at Mendell Street and Jerrold Avenue without stopping or slowing down for the stop sign. The truck then made a left turn onto the 1500 block of Jerrold Avenue, which has a severe downward slope. The truck swerved out of control and careened into vehicles parked along the north curb of Jerrold Avenue. The truck jumped the curb, drove across the sidewalk, and crashed into the front gate of a residence. The truck suffered severe front end and undercarriage damage during the collision. *Id.*





The officers exited their patrol vehicle and approached the disabled vehicle. PSR ¶ 9. The driver and sole occupant of the truck, later identified as Cyril Hanna, began to climb out through the driver's side window. Officers ordered Hanna to exit the vehicle and lie flat on the sidewalk. Hanna complied with the orders and was detained. *Id.*

At the scene, Hanna told officers he was on parole. PSR ¶ 10. Officers were able to identify Hanna from his SFPD mugshot. Officers conducted a records check which revealed that Hanna was on active California state parole following his March 2021 release from prison for armed robbery. *Id.*

Officers conducted a parole search of the truck and located a firearm on the floorboard directly below the cup holder. PSR ¶ 11. Officers inspected the firearm and determined that it was fully loaded, with a round inside the chamber. The firearm was a nine-millimeter Taurus GX4 handgun with a serial number of 1GA14982, loaded with 9 nine-millimeter FC cartridges. *Id.*



Officers collected DNA swabs from both Hanna and the firearm**.** PSR ¶ 12. A comparative analysis conducted by the SFPD Criminalistics Laboratory found "very strong support" for a positive match between the DNA samples from Hanna and the Taurus firearm, with the chance of the major DNA profile coming from a random person being 1 in 22.2 billion. *Id.*

The San Francisco District Attorney's Office filed state firearms charges against Hanna, and he was ordered detained pending trial. PSR ¶ 13. The state case was dismissed in lieu of federal firearms charges, and Hanna was transferred from San Francisco County Jail to federal custody. *Id.*

**B. Hanna Has a Long and Violent Criminal History**

In July 2012, Hanna was sentenced to 12 years in state prison for second degree robbery with use of a firearm. PSR ¶ 30. Hanna served nine years and was paroled from Salinas Valley State Prison in

March 2021. That lengthy state prison sentence reflected Hanna's violent criminal history, which includes a juvenile adjudication for voluntary manslaughter, two separate arrests for murder, two other arrests for attempted murder, and arrests for assault with a firearm, robbery, and firearm possession. *Id.* at ¶¶ 29, 34-46. As evidenced by the list below, Hanna has been arrested for a violent crime or firearms offense every year that he has been out of custody since 2002.

- 7/28/2002: juvenile adjudication for voluntary manslaughter (4 years in California Youth Authority)
- 10/25/2007: arrest for robbery and assault with a firearm
- 8/20/2008: arrest for attempted murder and robbery
- 7/18/2009: arrest for murder, five counts of first degree attempted murder, shooting at inhabited building, conspiracy, and participation in a criminal street gang
- 6/28/2010: arrest for murder
- 8/28/2011: arrest for carrying a concealed vehicle in a vehicle
- 7/11/2012: conviction for robbery with a firearm (12 years prison, served 9 years)
- 7/27/2021: arrest in Los Angeles for attempted armed burglary

### C. Prior Attempts at Treatment and Community Supervision Have Been Unsuccessful

Hanna continued this pattern of criminal conduct and refusal to follow the rules while on pretrial release in this case. Hanna originally was released to the New Bridge Foundation, where he was terminated within days for possessing drugs in the facility, jeopardizing not just his place in the program and his sobriety, but that of another resident. PSR ¶ 4. He was later taken into custody at Santa Rita Jail, where he again was found with drugs, prompting state charges. *Id.* at ¶ 5. After a stint at Options Recovery during which Pretrial reported that Hanna was dismissive and not committed, Hanna moved into his girlfriend's apartment – a later search of which yielded distribution quantities of methamphetamine, indicia of drug dealing, and ammunition. *Id.* When granted a last chance at release to the halfway house, Hanna lasted two days at the facility before violating their security rules with another resident and getting kicked out. *Id.* at ¶ 6. Hanna was remanded pending sentencing.

### D. Applicable Guidelines Calculation

Because Mr. Hanna pleaded guilty to firearm and ammunition possession without a plea agreement, there is no stipulated offense level, nor have the parties committed to any particular sentencing recommendations. However, the government agrees with Probation's calculations of a Total Offense Level of 13, a Criminal History Category of III (5 points), and a Guidelines range of 18-24

months. PSR ¶ 18-27. This includes a two-point enhancement under U.S.S.G. §3C1.2 for reckless endangerment during flight, given that Hanna drove at twice the legal limit through a residential neighborhood in the middle of the afternoon, running red lights and stop signs, before crashing into parked cars and the front steps of a house. This conduct posed a significant danger to the public.

| | **U.S.S.G. Section** | **Level/Points** |
|---|---|---|
| Base offense level | §2K2.1(a)(6) | 14 |
| Adjustment | §3C1.2<br>[Reckless endangerment during flight] | +2 |
| Acceptance of responsibility | §3E1.1 | -3 |
| Total offense level | | 13 |

Because Hanna's Guidelines range falls in Zone D of the Sentencing Table, the minimum term must be satisfied by a term of imprisonment. PSR ¶ 70. Probation has recommended a sentence of 18 months imprisonment. As detailed below, the United States recommends a sentence of 21 months.

## III. DISCUSSION

### A. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id*. After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(5) the need to provide restitution to any victims of the offense.

**B. A Sentence of 21 months is Warranted Under 18 U.S.C. § 3553(a).**

Mr. Hanna's dangerous conduct in this case, his criminal history, and his continued misconduct while in custody and on supervision warrant a sentence of 21 months' imprisonment.

**1. Nature and Circumstances of the Offense**

As detailed in the PSR, Mr. Hanna's offense conduct is very serious. He possessed a handgun loaded with nine rounds of ammunition at his ready disposal in the truck. When he saw officers, he ran a red light and drove at twice the legal limit through a residential neighborhood before crashing into parked cars and the front of a residence. He showed a total disregard for the well-being of pedestrians and other drivers on the road that afternoon. This incident followed an arrest in Los Angeles a month earlier for an armed burglary of a marijuana grow. And both incidents occurred in the months following his release from state prison after serving nine years for an armed robbery, and while under parole supervision. A 21-month term of imprisonment would adequately reflect the seriousness of Hanna's conduct, promote respect for the law, and provide just punishment for his crime. 18 U.S.C. § 3553(a)(2)(A)-(C).

**2. History and Characteristics of the Defendant, and Need for Deterrence**

Mr. Hanna's past and subsequent criminal conduct also support a 21-month sentence. As his past crimes show, this offense was not an isolated event. Hanna's criminal record includes a felony conviction for armed robbery, a juvenile adjudication for manslaughter, two separate arrests for murder, and two other arrests for attempted murder. As noted above, Hanna has been arrested for a new violent crime or firearms offense every year he has been out of custody since 2002, including several offenses when he was on parole and being supervised. Importantly, Hanna's 2012 armed robbery conviction arose out of a multi-defendant gang indictment in which Hanna was charged with shooting one victim during a robbery and attempted murder for using a firearm to rob a different victim. Hanna was also charged with active participation in a street gang, where the predicate acts included three murders,

including one murder committed by a defendant "in association with Cyril Hanna." These charges show that Hanna is not someone who simply possesses firearms "passively"; he has repeatedly *used* them against his victims.

This criminality continued even when given numerous chances at release pretrial. He was arrested in June 2022 after ammunition, distribution quantities of methamphetamine, cash, and indicia of drug dealing were found in his apartment. He was terminated from the New Bridge Foundation and halfway house for contraband and security violations. This inability and/or unwillingness to comply with the law—both preceding and postdating the charged conduct—poses a real danger to the public and warrants a custodial term. *See* 18 U.S.C. § 3553(a)(2)(B).

## IV. CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court impose a sentence of 21 months of imprisonment, three years of supervised release, a $100 special assessment, and forfeiture of the firearm and ammunition seized in this case.

DATED: October 19, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ Leif Dautch*
LEIF DAUTCH
Assistant United States Attorney