**Pages 1 - 15**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

UNITED STATES OF AMERICA, )
Plaintiff, )
VS. ) **NO. CR 22-00048 CRB**
CYRIL HANNA, )
Defendant. )

San Francisco, California
Wednesday, April 23, 2025

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
PATRICK D. ROBBINS
Acting United States Attorney
450 Golden Gate Avenue
San Francisco, California 94102
**BY: LEIF DAUTCH**
**ASSISTANT UNITED STATES ATTORNEY**

For Defendant:
LAW OFFICES OF BRIAN P. BERSON
1000 Brannon Street - Suite 488
San Francisco, California 94103
**BY: BRIAN P. BERSON**
**ATTORNEY AT LAW**

Also Present: **SALVADOR TINOCO, U.S. PROBATION**

Remotely Reported: Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
U.S. District Court - Official Reporter

**Wednesday - April 23, 2025** **10:10 a.m.**

**P R O C E E D I N G S**

---000---

**THE CLERK:** Calling criminal action CR22-0048, USA versus Cyril Hanna.

**MR. BERSON:** Good morning, Your Honor.

**THE COURT:** Good morning, Mr. Berson.

(Pause in proceedings.)

**THE COURT:** Good morning.

**MR. DAUTCH:** Good morning, Your Honor, Lief Dautch for the United States.

**MR. BERSON:** Brian Berson for Mr. Hanna standing beside me in custody. And, as we discussed in our paperwork, Mr. Hanna is going to enter a no contest plea to the Form 12 charges and hopefully proceed right to sentencing pursuant to the agreement we have.

**MR. TINOCO:** Good morning, Your Honor, Sal Tinoco with U.S. Probation.

**THE COURT:** Good morning. So, Mr. Hanna, your Counsel has indicated that you will -- you have been charged with a supervised release violation. I don't know how many other --

**MR. DAUTCH:** There's two allegations, Your Honor.

**THE COURT:** Two allegations. Are you prepared to -- and you are going to say no contest.

**THE DEFENDANT:** Yes, sir.

**THE COURT:** You are not contesting them and -- but what that really means is based upon the information that is contained in the Form 12, I'm going to find that you committed the violation. Do you understand that?

**THE DEFENDANT:** Yes, sir.

**THE COURT:** Okay. So, is that your wish?

**THE DEFENDANT:** Yes, sir, Your Honor.

**THE COURT:** Okay. So, you may take the admissions. That's what it is.

**THE CLERK:** Mr. Hanna, the Probation Officer has submitted a Probation Form 12 outlining that you violated Charges One and Two. Do you admit to violating those charges?

**THE DEFENDANT:** I plead no contest.

**MR. BERSON:** It is not an admission. He is stating no contest. So, it's not actually an admission.

**THE COURT:** Right, not an admission but do you plead --

**THE DEFENDANT:** I plead no contest.

**THE CLERK:** Yes, ma'am.

**THE COURT:** To both.

**THE DEFENDANT:** Yes.

**THE COURT:** And the Court, based upon the information in the Form 12, finds you -- finds the violations to have occurred.

**MR. BERSON:** All right.

**THE COURT:** And my understanding is you want to proceed to sentencing without any further --

**THE DEFENDANT:** Yes, sir.

**THE COURT:** -- reports.

**THE DEFENDANT:** Yes, sir, Your Honor.

**THE COURT:** Let me ask a question. Mr. Hanna, you recall -- if I recall correctly, you were the individual who was released in order to observe his --

**THE DEFENDANT:** Thank you, Your Honor. I appreciate it, Your Honor. It was my first child.

**THE COURT:** I'm glad you were there. Were there any incidents in connection with any of that?

**MR. TINOCO:** There was one incident where Mr. Hanna's battery died and he charged it the next morning; but outside of that, no other violations, Your Honor.

**THE COURT:** Okay. Well, that's not really a violation in the Court's view.

**THE DEFENDANT:** It died while I was at the hospital, Your Honor. I apologize for that.

**MR. BERSON:** It's not your fault.

**THE COURT:** It's all right. You don't have to apologize. Well, I'm glad that -- I'm glad that you had that opportunity, and I'm most appreciative of the fact that -- first, that you asked for it because I think it shows some real concern. You have photographs?

**THE DEFENDANT:** I do. A baby girl, my first one.

**THE COURT:** That's great.

**THE DEFENDANT:** Thank you, Your Honor. And thank you, Mr. Dautch, for allowing me --

**MR. BERSON:** May I, Your Honor?

**THE COURT:** Absolutely.

**THE DEFENDANT:** -- to be present.

**THE COURT:** Well, quite a handsome young lady. That's great. What is her name?

**THE DEFENDANT:** Her name is Chozyn, C-H-O-Z-Y-N.

**THE COURT:** Well, now you have something really important in my view to assist you. I want to say -- but I don't want to lead you on. I want to say the underlying conduct here -- that is, what got you here -- is very serious. And, you know, I think it has to be addressed. I think you have come a long way to address it, and I'm most hopeful that you won't be back here.

But my responsibility is to hold people basically accountable, and I think it's almost part of the healing process. It's -- it is a recognition that what happened in the past was really bad, frightened people.

And it just -- it's going to be a turning point. I really hope it is a turning point in your life. I think it will be. I think it can be and I think that there is a very good reason -- you know, to sentence you, I think, within the agreed

range that your Counsel and the Government Counsel was able to arrive at.

So, is there anything that you want to say prior to the imposition of sentence?

**MR. BERSON:** Are you talking to both of us?

**THE COURT:** Well, anybody who wants to talk, they can talk.

**MR. BERSON:** Yes. I -- you want to speak first?

**THE DEFENDANT:** I will let you.

**MR. BERSON:** Okay. I have a few things to say.

**THE COURT:** Sure. Go ahead, Mr. Berson.

**MR. BERSON:** So, Mr. Hanna pleaded no contest knowing that the Court would make a finding essentially that he did it, of guilt; but this isn't -- and in a way you may know more than me because you presided over essentially a preliminary revocation hearing. I wasn't there. I was appointed afterwards -- but this doesn't strike me as a slam dunk case by any means.

It was defensible. And you had -- I mean, first of all, no crime scene witnesses testified. And when Mr. Dautch said that there was live witness testimony, he is talking about the probation officer testified looking at pictures and the pictures -- you know, a guy they say was Mr. Hanna is wearing a mask; and they arrested somebody else afterwards and then let that guy go. That guy had a gun on him.

Nobody -- I think if I recall correctly from reading the police report -- nobody at the crime scene, none of the alleged victims -- there are three alleged victims -- identified Mr. Hanna. So, it's not a slam dunk. But Mr. Hanna weighed the pros and cons of what to do and this -- he had a baby on the way with a mother who previously had with Mr. Hanna -- had a stillborn and she was -- I spoke to her. She was under a lot of stress and had a difficult pregnancy physically and emotionally, and Mr. Hanna wanted to be fully present for her.

**THE COURT:** Here is what I don't understand and work me through it because that's the way we work.

**MR. BERSON:** Yes.

**THE COURT:** If what you are saying to me is, look, he didn't do this. Basically he didn't do this.

**MR. BERSON:** I'm not saying that. I'm saying the evidence -- okay, I wasn't there. What I'm saying is my evaluation of the evidence makes it defensible.

**THE COURT:** Well, why a lot of things are defensible. I mean, not a lot but there are a lot --

**MR. BERSON:** Yeah.

**THE COURT:** -- of things that are defensible, and that's why we have, quote, a defense. That's why we have an opportunity to defend.

Now, it may be that notwithstanding that it is defensible, there are reasons not to defend it; and the reasons may be

either, one, basically related to the offense or, two, separate from, that the reasons may be that, you know, where I am in my life, what is happening around me and what I'm exposed to -- and in this case 12 to 16 months -- I'm better off taking the deal.

**MR. BERSON:** Yes, sir.

**THE COURT:** In other words, the deal is too good given where I am in my life not to take, given the risks and so forth.

**MR. BERSON:** Yes, sir.

**THE COURT:** I got that. But that doesn't answer my question. My question is -- I have to sentence because I think I would operate within the plea agreement -- between 12 and 16. So, do I do 12? Do I do 16? Do I do like Solomon, do 14? I mean, there are those options.

**MR. BERSON:** Yes, sir.

**THE COURT:** However, the options I exercise -- what I have to go through -- and I'm not asking for sympathy. What I am going through is I have to figure out is what is the appropriate one to do. And I guess that I'm -- I would say to you I think in a sense, didn't do it really and he is just taking the deal because it is too good to pass up. Then, of course, I would sentence him to 12 months or 12 months and a day. I would do that.

And I don't want to put you in a difficult position so you

don't have to say anything. I'm just trying to figure out how I have to work, not how you have to work.

So, on the other hand, if, you know, he did it -- I think he either did or didn't do it. I don't know whether there are exigent circumstances surrounding it. He either did it or didn't do it. And if he did it, then I would sentence him to 16 months, you know.

And I guess I don't know what to do. In a way -- in a way, had -- if -- going back when he says no contest, which is tantamount to an admission for all purposes other than sort of civil liability and something else down the road, I guess -- I would -- I would say, okay, you have a right to plead no contest. That is a way to deal with it. You don't have to say I'm sorry, I shouldn't have done it, none of that. I will take that as basically an admission.

But if it is not that -- and I will make a finding that it is and the finding is here. I guess, in a sense I don't want Mr. Hanna to leave here -- because I don't think the difference between 12 and 16 months is a meaningful difference -- I don't want him to leave here with the thought that he was unfairly punished because I want him to be, quote, rehabilitated. That is, I want him to go forward with his new life, not with what I call the chip on the shoulder realizing that I think you negotiated a great disposition.

He got good legal advice but the legal advice comes after

the -- after the incident, so we forget about all of the legal advice. We go back to the incident because I'm punishing him not on the -- on where he is on the law or where we are today in a sense legally, I'm going back and saying, gee, this is a pretty -- this is a bad thing. This is a bad thing.

And a person shouldn't just walk out of court having done the bad thing and not being held accountable for the bad thing. So, I don't know that there is an answer that you can give today or choose to give today or Mr. Hanna gives today. I don't know. I just simply have to figure out what to do.

And that's my job, by the way. So, I'm not -- I'm not complaining about it. I am trying to explain a rationale of what's going on because I'm such a devout believer in what I call truth in sentencing, which was the purpose of The Sentencing Reform Act of 1984.

So, that I think is so important that everybody leaves the courtroom and they don't turn around and say what happened. Why did the Judge do that? I don't get it.

**MR. BERSON:** Let me talk first.

**THE COURT:** Okay. So, you see the problem.

**MR. BERSON:** Yes, sir. I can -- I can help a little bit, I think. We don't know what's going to happen in Alameda County as far as --

**MR. DAUTCH:** Contra Costa County.

**THE COURT:** Oh, so that's pending.

**MR. BERSON:** So, that's why we are pleading no contest. That's the main reason.

**THE COURT:** Oh, then it is easy for me. Then I'm not going to in a sense really punish him on -- on this because then I'm going to let Alameda County make a determination. I would actually give him a 12-month sentence.

**MR. BERSON:** All right.

**THE COURT:** Not 12 months and a day.

**MR. BERSON:** Appreciate that.

**THE COURT:** I forgot that he is in jeopardy under that actually. Okay, that actually answers the question --

**MR. BERSON:** Okay, good.

**THE COURT:** -- as far as I'm concerned.

**MR. BERSON:** Because he is going to fight it there, you know.

**THE COURT:** That's fine. You are free to do it. You are free not to do it. I really do want you to get on with your life. I think the important thing here is going forward; but I do think, you know, you have to address this particular underlying problem. It doesn't just go away and it is important for your going forward. So, do you want to say anything? It is up to you. Be careful what you say because there is --

**THE DEFENDANT:** Yes, Your Honor. I was just -- you know, you already came to a conclusion for the two of them. I

just want to say thank you again to the DA and for allowing me to be there to see my daughter come into this world. I just want to put emphasis on that, how much I appreciate that. The Court didn't have to allow me to do that. And I wanted to say could you -- you know, I was going to say can you take into consideration my integrity for coming and facing the allegations on my own behalf? I didn't flight. You know, I came as soon as the marshals was there, I was there to face the allegations. On my own accord I walked in here not in -- as a man.

**THE COURT:** So, I am --

**MR. DAUTCH:** May I just say something very briefly, Your Honor?

**THE COURT:** Of course.

**MR. DAUTCH:** I'm not arguing against the 12-month sentence. I think that's a reasonable determination in light of the pending State proceedings. I want Your Honor to be -- feel assured in imposing a sentence that you are not sentencing an innocent man nor did the Government --

**THE COURT:** I don't feel I am.

**MR. DAUTCH:** -- nor did the Government proceed against an innocent man. I will just briefly say there were kind of two aspects of the allegation. It is did a robbery occur and was Mr. Hanna involved.

Zip ties, duct tape were found at the scene corroborating

what the victim said. Most of the situation is actually captured on surveillance footage which shows Mr. Hanna -- the person we believe to be Mr. Hanna and his accomplice coming up to the stairs. The victim coming up the stairs. Them going through the car where the two female victims were. So, certainly a robbery occurred.

Then there is surveillance footage. Mr. Tinoco identified Mr. Hanna in the surveillance footage as the second robber. He supervised released him for, you know, more than a year. He certainly knows him well based on his facial features and his build.

Then there was a cell phone found at the scene that Mr. -- the person we believe to be Mr. Hanna's accomplice -- dropped his phone outside of the car where the two female victims were. On that phone were 59 phone calls between that phone call and a contact saved as Cuz Hanna Ann; so, Mr. Hanna's last name, which is somewhat unique.

On that same photo was a Facetime screenshot of Mr. Hanna's face taken that morning. There was also an Instagram account that had two photos of Mr. Hanna wearing the same skeleton mask that Mr. Hanna is wearing in the surveillance footage of the robbery.

So, again, I say that not because I'm arguing for a higher sentence. I just want Your Honor to feel assured that the strength of the evidence supports whatever sentence Your Honor

imposes.

**THE COURT:** Okay. Well, let me say what I'm doing. I am -- does anybody have anything further to say?

**MR. BERSON:** Just briefly, Your Honor.

**THE COURT:** Yeah.

**MR. BERSON:** So, I respect what Mr. Dautch has said. There are things he doesn't know that call into question some of the evidence. I'm not going to say anything about it. I don't know if he is going to be charged. I don't want to jeopardize his ability to defend himself.

**THE COURT:** Here is the way I look at it, first of all, I'm revoking supervised release. I am sentencing you to 12 months --

**MR. BERSON:** Thank you.

**THE COURT:** -- in the custody of the United States, Department of -- Bureau of Prisons.

**MR. DAUTCH:** Bureau of Prisons.

**THE COURT:** Thank you. And no supervised release to follow. It is -- I'm doing so -- in case this transcript is being reviewed by anyone, I'm doing so in light of the admissions; but it is also with the understanding that the County of Alameda -- is it Alameda?

**MR. DAUTCH:** It is Contra Costa County.

**THE COURT:** -- will review the matter and make a determination as to whether or not they believe on the merits

of their case and on the sentence that's imposed -- that I'm imposing, there is a reason to go forward with their prosecution. That's up to them. It's not up to me. All right. Good luck. Be a good father.

**THE DEFENDANT:** Thank you, Your Honor. Thank you. Thank you, Mr. Dautch. Thank you.

**THE COURT:** That's more important than anything.

**THE DEFENDANT:** Thank you.

**MR. DAUTCH:** Good luck, sir. And congratulations.

**THE DEFENDANT:** You won't see me no more.

**MR. DAUTCH:** Thank you, Your Honor.

(Proceedings adjourned at 10:30 a.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: September 23, 2025

Marla Knox

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter